IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHERRY BUSTOS,

        Plaintiff,

vs.                                           No. CIV 09-0208 RB/LFG

STATE OF NEW MEXICO
CORRECTIONS DEPARTMENT,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's ("NMCD's") Motion for Summary Judgment (Doc. 21), filed on August 24, 2009. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions and arguments of counsel, record, relevant law, and being otherwise fully advised, the Court grants summary judgment in favor of NMCD.

**I.      Background.**

On February 2, 2009, Plaintiff ("Ms. Bustos") filed suit in the First Judicial District Court of the State of New Mexico, alleging claims based on sex discrimination and retaliation, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, ("Title VII"), and the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-7(A) ("NMHRA"). Ms. Bustos alleges that NMCD discriminated and retaliated against her by refusing to consider Ms. Bustos for a vacant position and hiring a less qualified male for the position. On March 4, 2009, NMCD removed the matter to federal court pursuant to 28 U.S.C. § 1441.

NMCD has moved for summary judgment on both claims, arguing that Ms. Bustos has presented no direct evidence of retaliation and she is unable to establish a prima facie case of discrimination or retaliation within the burden-shifting framework of *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).

## II.    Standard.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' "  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Turner v. Pub. Serv. Co. of Colo*, 563 F.3d 1136, 1142 (10th Cir. 2009).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003).  If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that, on summary judgment, the plaintiff can "no longer rest on the pleadings")).

The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323(1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party

on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Although "[t]he burden of showing the absence of a genuine issue of material fact . . . is upon the movant," *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005), the nonmovant " 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Summary judgment is appropriate unless the nonmoving party makes a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir. 2006) (internal quotations omitted). Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## III.  Statement of Facts.

On summary judgment, the Court must view the facts in a light most favorable to Ms. Bustos, the non-moving party. *See Turner*, 563 F.3d at 1142. Thus, reasonable inferences are drawn and factual ambiguities are resolved in Ms. Bustos's favor.

In July, 2002, Ms. Bustos, who was then known as Sherry DeJesus, began employment with the New Mexico Boys School in Springer, New Mexico, which was a juvenile facility operated by the New Mexico Children, Youth and Families Department ("CYFD"). (Pl. Ex. A, Affidavit of Sherry Bustos ("Bustos Aff.") ¶ 2.) CYFD terminated Ms. Bustos's employment in September

2002.  (*Id.*)

In October 2002, Ms. Bustos filed a charge of discrimination with the New Mexico Human Rights Division (HRD) against CYFD alleging sex discrimination and retaliation.  (Bustos Aff. ¶ 2.)  In her charge of discrimination, Ms. Bustos alleged, *inter alia*, that CYFD had terminated her employment due to her opposition to sexually harassing behavior of employees of CYFD.  (*Id.*)  HRD investigated and found probable cause that CYFD had discriminated against Ms. Bustos in violation of the New Mexico Human Rights Act.  (Bustos Aff. ¶ 3.)

On June 16, 2003, Ms. Bustos filed suit against CYFD and others in the First Judicial District Court of the State of New Mexico.  (*Id.*)  Defendants therein removed the case to federal court on July 16, 2003.  (*Id.*) *See DeJesus v. State of New Mexico, et al.*, CIV 03-0834 JC/ACT.  In May 2004, Ms. Bustos entered into a settlement agreement with CYFD and the lawsuit was dismissed with prejudice.  (Bustos Aff. ¶ 4.)  In the settlement agreement, CYFD agreed, among other things, to document the termination as a resignation and expunge Ms. Bustos's personnel file.  (*Id.*)

Maria Consuelo Chavez served as the human resources administrator at the New Mexico Boys School from 1999 until December 31, 2006, when the New Mexico Boys School closed.  (Def. Ex. A, Affidavit of Maria Consuelo Chavez ("Chavez Aff.") ¶ 2.)  On January 1, 2007, the facility opened as the Springer Correctional Center (SCC), an adult minimum-security prison operated by NMCD.  (*Id.*)  On the same day, Ms. Chavez transferred her employment from CYFD to NMCD as the senior human resources administrator at the SCC.  (*Id.*)

On February 12, 2007, Ms. Chavez posted an advertisement on the New Mexico State Personnel Office's on-line system seeking applicants for two positions at the SCC.  (Chavez Aff. ¶ 4.)  The two positions were full-time addictions treatment counselors, to be supervised by Charles

A. King, M.S., Bureau Chief of the Addictions Services Bureau at NMCD in Santa Fe.  (*Id.*)

The job description for the addictions treatment counselor positions, which was included in the on-line posting, stated that the positions would remain open "until all vacant positions are filled" and "there is no hard copy application" for the positions.  (Def. Ex. A-1.)  The addictions treatment counselor positions required (1) a master's degree in psychology, social work, or guidance and counseling, (2) LISW, LMSW, LPCC, LADAC, or LPC licensure, and (3) one year experience in psychology, social work, or guidance and counseling.  (*Id.*)  The job description stated that the "hiring agency accepts substitutions under the required education and/or experience fields for this position."  (*Id.*)

Five individuals submitted applications for the two addictions treatment counselor positions at the SCC.  (Chavez Aff. ¶ 6.)  Ms. Bustos did not submit an on-line application for the two open addictions treatment counselor positions posted on February 12, 2007.  (Chavez Aff. ¶ 7.)

Mr. King reviewed the five applications for the two addictions treatment counselor positions and selected three of the applicants for interviews.  (*Id.*)  A two-person interview panel conducted the interviews on March 22, 2007.  (Def. Ex. A-2.)  Thereafter, Mr. King selected David M. Segura and Ronald Malott to fill the positions.  (Chavez Aff. ¶ 8.)

On April 6, 2007, Ms. Chavez prepared and signed two separate letters offering one addictions treatment counselor position to Mr. Segura and the other to Mr. Malott.  (Def. Ex. A-4 and A-4.)  The offers were accepted.  (*Id.*)  Mr. Segura and Mr. Malott started work as addictions treatment counselors at the SCC in May 2007.  (Chavez Aff. ¶ 8.)  Mr. Malott resigned his position for health reasons, effective March 7, 2008.  (*Id.*)  Mr. Segura has been continuously employed as an addictions treatment counselor at the SCC from May 2007 through the present.  (*Id.*)

On May 22, 2008, Ms. Chavez posted an advertisement on the New Mexico State Personnel Office's on-line system seeking applicants for the addictions treatment counselor position at SCC vacated by Mr. Malott.  (Chavez Aff. ¶ 10.)  Ms. Bustos did not apply for the addictions treatment counselor position posted on May 22, 2008.  (*Id.*)  Mr. King hired Desiree Ramirez to fill the position vacated by Mr. Malott.  (*Id.*)  Ms. Ramirez continues to be employed as an addictions treatment counselor at the SCC.  (*Id.*)  Mr. Segura and Mr. Malott lacked master's degrees when they were hired.  (Pl. Ex. C-3 and C-4.)

From the opening of the SCC in January 1, 2007, the Addictions Treatment Bureau has had only two authorized positions for addictions treatment counselors at the SCC.  (Def. Ex. E, Second Affidavit of Charles A. King, M.S. (King Aff. II) ¶ 3.)  The Addictions Treatment Bureau also employs one addictions facility manager and one secretary at the SCC.  (*Id.*)  NMCD has not attempted to create, authorize, or fund a third addictions treatment counselor position at the SCC. (King Aff. II ¶ 4.)  NMCD has never employed, nor sought to employ, a third addictions treatment counselor at the SCC.  (Def. Ex. F, Second Affidavit of Maria-Consuelo Chavez (Chavez Aff. II) ¶ 2.)

On May 18, 2007, Ms. Chavez posted an advertisement on the New Mexico State Personnel Office's on-line system seeking applicants for the position for addictions facility manager at the SCC.  (Chavez Aff. ¶ 12.)  This position would supervise the two addictions treatment counselors at the SCC.  (Def. Ex. A-6.)  The position required (1) a master's degree in psychology, social work, or guidance and counseling, (2) LISW, LMSW, LPCC, LADAC, or LPC licensure, and (3) a minimum of five years of job experience in psychology, social work, or guidance and counseling. (*Id.*)  The closing date for applications for the addictions facility manager position was June 16,

6

2007. (*Id.*) The job description stated that "[t]his agency may accept authorized equivalencies by the SPO under the required education and/or experience fields." (*Id.*)

Ms. Bustos telephoned Ms. Chavez in June 2007 to inquire about the addictions treatment counselor position. (Bustos Aff. ¶ 6.) Ms. Chavez told Ms. Bustos that the position was open, informed Ms. Bustos of the job requirements, and gave Ms. Bustos the address of a website where Ms. Bustos could apply for the position. (*Id.*)

When she went to the website, Ms. Bustos could not find the application for addictions treatment counselor. (Bustos Aff. ¶ 7.) Ms. Chavez testified in her deposition that when persons are hired to file a position posted on the on-line system, the newly-hired employees are coded into the system and the software automatically closes the position. (Pl. Ex. D, Consuelo Chavez Deposition (Chavez Dep.) at 54-55.) Accordingly, when Mr. Segura and Mr. Malott were hired to fill the addictions treatment counselor positions at SCC, Ms. Chavez coded them as hired and the on-line system automatically closed the posting for addictions treatment counselors at the SCC. (*Id.*) This testimony indicates that Ms. Bustos could not find the application for addictions treatment counselor when she tried to fill one out in June 2007 because the two existing addictions treatment counselor positions at the SCC were filled in May 2007. (*Id.*)

Undeterred by the absence of an on-line application for addictions treatment counselor position, Ms. Bustos completed the on-line application for the addictions facility manager position. (*Id.*) Ms. Bustos called Ms. Chavez and informed her that she had completed the on-line application for the addictions facility manager position. (*Id.*) Ms. Bustos informed Ms. Chavez that Ms. Bustos intended to apply for the addictions treatment counselor position and not for the addictions facility manager position. (Bustos Aff. ¶ 10.)

Ms. Bustos asked Ms. Chavez to consider Ms. Bustos's on-line application for the addictions facility manager position as an application for an addictions treatment counselor position. (*Id.*) More specifically, Ms. Bustos stated in her affidavit "[a]t all times [Ms. Bustos] made clear to [Ms.] Chavez that [Ms. Bustos] was applying for the Addictions [Treatment] Counselor position and not the Addictions Facilities Manager position." (Bustos Aff. ¶ 10.) At no time did Ms. Chavez inform Ms. Bustos that the addictions treatment counselor positions had been filled. (*Id.*) At no time did Ms. Chavez inform Ms. Bustos that the NMCD would not consider her application for addictions facility manager as an application for addictions treatment counselor. (*Id.*)

Ms. Chavez asked Ms. Bustos to fax Ms. Bustos's resume and educational certificates. (Bustos Aff. ¶ 8.) On or about June 20, 2007, Ms. Chavez sent Ms. Bustos an email requesting a hard copy of her resume. (*Id.*) On June 22, 2007, Ms. Bustos faxed Ms. Chavez her resume and educational certificates. (*Id.*)

After she faxed her resume and educational certificates to Ms. Chavez, Ms. Bustos spoke to Ms. Chavez on the telephone. (Bustos Aff. ¶ 8.) Ms. Chavez informed Ms. Bustos that the NMCD would waive the educational requirements of the addictions treatment counselor position for experience, and that it appeared that Ms. Bustos had the requisite combination of education and experience. (*Id.*)

Ms. Chavez told Ms. Bustos that interviews would be conducted in Springer and that Ms. Chavez would contact Ms. Bustos to set up an interview within a week. (Bustos Aff. ¶ 9.) After Ms. Chavez did not contact Ms. Bustos, Ms. Bustos called Ms. Chavez to inquire about the interview. (*Id.*) Ms. Chavez told Ms. Bustos "I know who you are." (*Id.*) Ms. Chavez then declined to schedule an interview. (*Id.*)

There was no vacant addictions treatment counselor position at the SCC on June 15, 2007, which was the date Ms. Bustos submitted her application for addictions facility manager. (King Aff. II ¶ 5; Chavez Aff. II ¶ 3.)  The FTE (full-time equivalent) Count/Vacancy Rate report for the SCC for June 11, 2007 shows that both addictions treatment counselor positions and the addictions secretary position were filled as of that date and the addictions facility manager position was vacant on that date.  (Def. Ex. F-1.)  At her deposition, in response to questioning from counsel for Ms. Bustos, Ms. Chavez agreed that if NMCD believed it had the need for more addictions treatment counselors at the SCC, it could have re-allocated the resources. (Doc. 38 at 3.)  However, Ms. Chavez testified in her deposition that the organization had never under filled positions to shift funds.  (Chavez Dep. at 52.)

The SCC has one position for a mental health counselor, who must be a New Mexico licensed psychologist under the supervision of the Mental Health Services Bureau of the NMCD in Santa Fe.  (Chavez Aff. II ¶ 4.)  The mental health counselor position at the SCC was occupied as of June 11, 2007.  (Def. Ex. F-1.)

Ms. Bustos and two other individuals, Patricia Bowen and Kathy Boyer, submitted on-line applications for the addictions facility manager position.  (Def. Ex. A-7.)  The on-line system scored Ms. Bowen at 95%, Ms. Bustos at 5%, and Ms. Boyer at 0%, based on their answers to screening questions.  (*Id.*)  In other words, based on Ms. Bustos's responses to questions, the online system awarded Ms. Bustos a score of 10 points out of a possible 220 for the addictions facility manager. (Def. Ex. C, Affidavit of Sheila Zamora ("Zamora Aff.") ¶ 6.)  In contrast, the system awarded a score of 210 points to Ms. Bowen.  (*Id.*)

Ms. Chavez informed Mr. King that she was unable to access the applicant data for Ms.

Bustos and Ms. Boyer through the on-line system.  (Def. Ex. A-8.)  On June 20, 2007, Ms. Chavez

sent an email to Ms. Boyer requesting that Ms. Boyer fax or mail her application. (Def. Ex. A-9.)

On the same day, Ms. Chavez sent an email to Ms. Bustos asking her to submit a hard copy of Ms.

Bustos's resume by fax or mail.  (Def. Ex. A-10.)

Ms. Boyer responded that she was not interested in the addictions facility manager position.

(Chavez Aff. ¶ 15.)

 Ms. Bustos faxed, and possibly mailed, a hard copy of her resume and attachments.  (*Id.*)

The documents submitted by Ms. Bustos indicated that Ms. Bustos lacked a master's degree, New

Mexico licensure, and possibly the requisite five years of experience.  (*Id.*)  In fact, Ms. Bustos did

not have a master's degree in psychology, social work, or guidance and counseling, she was not

licensed in New Mexico as a LISW, LMSW, LPCC, LADAC, or LPC, and she did not have five

years job experience in psychology, social work, and/or guidance and counseling at all relevant

times.  (Def. Ex. D, Pl.'s Responses to Def.'s Requests for Admissions Nos. 1-3.) Mr. King decided

not to interview Ms. Bustos for the addictions facility manager position because Ms. Bustos did not

meet the posted minimum qualifications.  (Def. Ex. B, Affidavit of Charles A. King ("King Aff.")

¶ 6.)  On July 20, 2007, Mr. King interviewed Ms. Bowen, but he decided not to hire her.  (Chavez

Aff. ¶ 17.)

On August 3, 2007, Ms. Chavez wrote a letter to Ms. Bowen informing her of Mr. King's

decision not to hire Ms. Bowen for the "Addictions Manager" position.  (Def. Ex. A-11.)

On the same day, Ms. Chavez wrote a letter to Ms. Bustos informing Ms. Bustos that her

application had been rejected because she did not meet the minimum requirements for the

"Addictions Manager" position "which requires a Masters Degree in psychology, social work, or

10

guidance and counseling."  (Def. Ex. A-12.)

Mr. King makes all final hiring decisions for all addictions treatment counselors and addictions facility managers.  (Def. Ex. B ¶ 4.)  Until informed by defense counsel in 2009, Mr. King had no knowledge that (1) Ms. Bustos had been terminated from her position with the New Mexico Boys School in 2002, (2) she had filed a charge of discrimination in 2002, (3) she had sued CYFD in 2003, or (4) she had settled the lawsuit with CYFD.  (Def. Ex. B ¶ 8.)  Mr. King is the only person who has authority to waive the educational, licensure, or experience requirements for an addictions facility manager.  (Def. Ex. B ¶ 10.)  Mr. King has never waived such requirements for an addictions facility manager.  (*Id.*)

From January 1, 2007 through July 31, 2009, the only New Mexico state government position for which Ms. Bustos applied on the on-line system was the addictions facility manager position at the SCC on June 15, 2007.  (Zamora Aff. ¶ 5.)

In November 2007, Ms. Bustos filed a charge of discrimination with the New Mexico Human Rights Bureau of the Labor Relations Division (HRB), alleging sex discrimination and retaliation, stating in pertinent part:

> In June 2007 I applied for a position with the respondent.  I did not meet the educational requirements however HR told me they would waive the education requirements for experience.  I have knowledge that they have done this for two similarly situated male employees.  However on July 25, 2007 HR contacted me and told me that she knew who I was and I was not going to be hired because they "don't need that kind of trouble."  She then told me that I did not meet the educational requirements for the position.

(Def. Ex. A-7, 2007 Charge of Discrimination.)[1]

---

[1] The HRB issued a right to sue letter on November 5, 2008.  Ms. Bustos exhausted administrative remedies and timely filed the instant lawsuit.  (*See* Pretrial Order (Doc. 36) at 6-7.)

In her affidavit, Ms. Chavez denies making such, or similar, statements.  (Chavez Aff. ¶ 20.)

Ms. Chavez states, in her affidavit, that she was out of the office on vacation on July 25, 2007,

(Chavez Aff. ¶ 20), and attached leave records showing that she was on vacation from July 24, 2007

through July 26, 2007.  (Def. Ex. A-13.)  In response, Ms. Bustos states that, if Ms. Chavez was on

vacation on July 25, 2007, then Ms. Bustos was mistaken about the date of the conversation.  (Doc.

25 at 11.)  In her affidavit, Ms. Bustos reiterated that Chavez stated "I know who you are" and then

declined to schedule an interview.  (Bustos Aff. 9.)  Ms. Bustos did not include any information in

her affidavit about whether Ms. Chavez said that Ms. Bustos was not going to be hired because they

"don't need that kind of trouble."  (*Compare* Bustos Aff. *with* Def. Ex. A-7.)

On a fax transmittal sheet regarding the "Addictions Manager" position to Liza Gomez for

Mr. King, dated July 11, 2007, Ms. Chavez wrote "Sherry's [Bustos's] license is out of Colorado.

Ask me about her."  (Pl. Ex. C-2.)

Ms. Chavez was aware that Ms. Bustos had been terminated from her probationary position

of juvenile correctional officer at the New Mexico Boys School in 2002.  (Chavez Aff. ¶ 21.)

However, Ms. Chavez stated in her affidavit that, until Ms. Bustos filed her charge of discrimination

in "2008" [2007], Ms. Chavez was unaware that Ms. Bustos had filed a charge of discrimination in

2002 and sued CYFD in 2003.  (*Id.*)

Antonio Arellano was employed at the New Mexico Boys School from July 1997 through

his December 2006 retirement.  (Pl. Ex. B, Affidavit of Antonio Arellano ("Arellano Aff.") ¶ 2.)

At the time of his retirement, Mr. Arellano held the position of Juvenile Corrections Officer

Manager.  (*Id.*)  Mr. Arellano is acquainted with both Ms. Bustos and Ms. Chavez. (Arellano Aff.

¶¶ 3-4.)  Mr. Arellano states, in his affidavit, that it was common knowledge among the employees

of the New Mexico Boys School that Ms. Bustos had filed a lawsuit after she was terminated. (Arellano Aff. ¶5.)  Sometime during 2004, Mr. Arellano had a conversation with Ms. Chavez regarding Ms Bustos.  (Arellano Aff. ¶6.)  Ms. Chavez asked Mr. Arellano: "Have you talked to Sherry [Bustos] lately?"  (*Id.*)  Ms. Chavez then told Mr. Arellano: "She [Sherry Bustos] won her case.  You know that?"  (*Id.*)

**IV.    Discussion.**

**A.     Ms. Bustos has presented no direct evidence of discrimination or retaliation.**

A plaintiff can prove that her employer discriminated against her by providing either direct or circumstantial evidence of discrimination or retaliation.  *See Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002).  Ms. Bustos contends that she has presented direct evidence of retaliation.  (Doc. 25 at 13.)

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."  *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007) (citation omitted).  In other words, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."  *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (citation omitted).  In contrast, "[s]tatements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements."  *Hall*, 476 F.3d at 855.

Direct evidence of retaliation in this case would entail "oral or written statements on the part of a defendant showing a discriminatory motivation."  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  "A statement that can plausibly be interpreted two different ways

13

- one discriminatory and the other benign - does not directly reflect illegal animus, and thus, does not constitute direct evidence."  *Hall*, 476 F.3d at 855 (quotation omitted).

For direct evidence, Ms. Bustos relies on the statement of Ms. Chavez wherein Ms. Chavez told Ms. Bustos "I know who you are" and then declined to schedule an interview.  Although Ms. Chavez denies that she made the statement, viewed in the light most favorable to Ms. Bustos, the record establishes that Ms. Chavez stated to Ms. Bustos "I know who you are." Although not discussed in the response brief, on a fax transmittal sheet regarding the "Addictions Manager" position to Liza Gomez for Mr. King, dated July 11, 2007, Ms. Chavez wrote "Sherry's [Bustos's] license is out of Colorado.  Ask me about her."  (Pl. Ex. C-2.)

These statements can easily be interpreted benignly to mean that Ms. Chavez realized that Ms. Bustos was the former Ms. DeJesus or that Ms. Chavez had received the hard copy of the resume.  The statements neither refer to the prior protected activity, nor do they demonstrate any discriminatory or retaliatory animus.  As such, the statements do not qualify as direct evidence of discrimination or retaliation.

Moreover, the general rule holds that statements by a non-decision maker, such as Ms. Chavez, cannot be used to establish that a decision was tainted by discriminatory or retaliatory animus.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).  NMCD produced evidence that Mr. King was the decision maker, not Ms. Chavez.  In response, Ms. Bustos offered no evidence to refute this showing.  Because Ms. Chavez was not the decision maker with respect to the interview or hiring decisions, her statements do not constitute direct evidence of discrimination or retaliation.

There is an exception to this general rule that arises when the record contains evidence from

which a reasonable inference may be drawn that a decision maker adopted or relied upon the allegedly discriminatory or retaliatory statement in reaching its decision. *See, e.g., Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1097 (6th Cir. 1996). However, for the exception to apply, the employee must link the statements to the decision. *See id.* In this case, Ms. Bustos has presented no evidence that Mr. King adopted or relied on Ms. Chavez's statements. The evidence of record, considered in the aggregate and construed in the light most favorable to Ms. Bustos, contains no direct evidence of discrimination or retaliation. For this reason, Ms. Bustos must rely on circumstantial evidence of discrimination or retaliation to support her claims. *See Danville*, 292 F.3d at 1249.

**B.      Ms. Bustos has not established a prima facie case.**

Where, as here, the plaintiff does not offer direct evidence of discrimination or retaliation, but instead relies on circumstantial evidence, the claims are analyzed under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1225 (10th Cir. 2008). *McDonnell Douglas* provides that, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). If the defendant meets its burden of production by offering a legitimate rationale in support of its action, the burden shifts back again to the plaintiff to show that the defendant's proffered reason was a pretext for discrimination or retaliation. *Id.* The New Mexico Supreme Court has adopted the *McDonnell Douglas* paradigm for claims of unlawful discrimination and retaliation under the New Mexico Human Rights Act. *Juneau v. Intel Corp.*, 139 N.M. 12, 15, 127 P.3d 548, 551 (2005).

In *McDonnell Douglas*, the Supreme Court enumerated the elements required in order for a plaintiff to establish a prima facie case in the failure-to-hire context. *McDonnell Douglas*, 411 U.S. at 802-04. The elements are: (1) plaintiff belongs to a protected class; (2) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *Id.*; *see also Fischer*, 525 F.3d at 982-83; *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005).

Ms. Bustos has failed to establish the second element of the prima facie case of discrimination with respect to the addictions treatment counselor position. Notably, Ms. Bustos has produced no evidence showing that she actually applied for this position. *See Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1238 (10th Cir. 2002) (holding a plaintiff must produce evidence showing that he actually reapplied for employment after he was laid off). Ms. Bustos has submitted evidence that Ms. Bustos asked Ms. Chavez to consider Ms. Bustos's application for the addictions facility manager position as an application for the addictions treatment counselor position. However, the unequivocal evidence establishes that the only two addictions treatment counselor positions at SCC had been filed in May 2007 and no such position was open on the date that Ms. Bustos applied.

In her surreply, Ms. Bustos contends that NMCD could have re-allocated funds designated for the hiring of a corrections officer and used such funds to hire another addictions counselor. (Doc. 38 at 3.) However, Ms. Chavez testified in her deposition that the organization had never under filled positions to shift funds to create other positions. (Chavez Dep. at 52.) At her deposition, in response to questioning from counsel for Ms. Bustos, Ms. Chavez agreed that if NMCD believed

16

it had the need for more addictions treatment counselors at the SCC, it could have re-allocated the resources. (Chavez Dep. at 54.)  However, there is no evidence indicating the NMCD believed it needed a third addictions treatment counselor at the SCC.  The law does not require a prospective employer to create a new position for a job applicant.  *See e.g. Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1170 (10th Cir. 1999) (en banc) (ADA reassignment case); *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (observing that a court does not "act as a super personnel department, second guessing employers' . . . business judgments" (quotation omitted) (discussing pretext)).  Viewed in the light most favorable to Ms. Bustos, the undisputed evidence establishes that two addictions treatment counselor positions existed at the SCC and both were filled in May 2007. In that Ms. Bustos neither inquired about nor applied for an addictions treatment counselor position until June 2007, she has not established the second element of the prima facie case of discrimination.

Additionally, Ms. Bustos has not established the fourth element of the prima facie case of discrimination.  The fourth element requires a plaintiff to show that, after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802-04.  An addictions treatment counselor position did not remain open after Ms. Bustos was rejected; indeed, such a position was not open on June 15, 2007, the date she submitted her application.  Therefore, Ms. Bustos has failed to establish the fourth element of the prima facie case of discrimination with respect to the addictions treatment counselor position.

Ms. Bustos has failed to establish the second element of the prima facie case of discrimination with respect to the addictions facility manager position.  Viewed in the light most favorable to Ms. Bustos, the record shows that Ms. Bustos was not qualified for this position and

17

Mr. King never waived the posted requirements for addictions facilities manager position for any successful applicant. Indeed, in her response brief, Ms. Bustos states that she did not intend to apply for the addictions facility manager position and only filled out the application for addictions facility manager so that she could be considered for an unavailable and/or non-existent addictions treatment counselor position. (Doc. 25 at 8.) Regardless, the evidence does not support a prima facie case of discrimination with respect to the addictions facility manager position.

In addition, the evidence does support a prima facie case of retaliation. To establish a prima facie case of retaliation, Ms. Bustos must show that (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) there is a causal nexus between her opposition and the employer's adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008). Although Ms. Bustos engaged in protected activity by filing the 2003 charge and 2004 lawsuit, she has not satisfied the second and third elements of the prima facie case of retaliation.

The second element of the prima facie case of retaliation requires that the subsequent actions taken against the individual who engaged in the protected activity would be considered by a reasonable employee to be material and adverse, thereby dissuading her from making a complaint about discrimination. *Somoza*, 513 F.3d at 1213. In this case, the evidence establishes that Ms. Bustos was not considered for the addictions treatment counselor job because there was no vacant addictions treatment counselor position open when she submitted her application. Ms. Bustos was not interviewed for the addictions facility manager job because she was not qualified for that position. Indeed, Ms. Bustos stated in her affidavit "[a]t all times [Ms. Bustos] made clear to [Ms]

Chavez that [Ms. Bustos] was applying for the Addictions [Treatment] Counselor position and not the Addictions Facilities Manager position." (Bustos Aff. ¶ 10.)

Put another way, the evidence shows that NMCD did not consider Ms. Bustos for a position that was not open when she applied and did not interview her for a position for which she was not qualified and for which she did intend to apply. These facts would not dissuade a reasonable worker from making or supporting a charge of discrimination. For this reason, Ms. Bustos has failed to satisfy the second prong of the prima facie case for retaliation.

Significantly, Ms. Bustos has not shown the causal connection required by the third prong of the prima facie case of retaliation. "[A] causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007) (quotation omitted). The Tenth Circuit has permitted plaintiffs to establish the causation element of the prima facie case of retaliation by showing close temporal proximity between a protected activity and an adverse action. *Compare Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (prima facie case was established where defendant declined to interview and hire plaintiff who prevailed in lawsuit against university only one month before); *with Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181-82 (10th Cir. 2006) (nine months too temporally remote to support inference of causation); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) (time period between two to three months not sufficient alone to establish causation in Title VII failure-to-hire case).

In this case, more than three years elapsed between the 2004 settlement and the June 2007 job application. As a matter of law, this is too long to establish a causal connection based on

temporal proximity alone.  *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007)

(holding four months is too large a time gap to establish a causal connection); *Piercy*, 480 F.3d at

1198 (noting that Tenth Circuit has found a proximity of three months insufficient to support "a

presumption of causation"); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)

("[W]e have held that a three-month period, standing alone, is insufficient to establish causation.").

Because the three-year time period, standing alone, does not support an inference of

retaliatory motive, Ms. Bustos must present additional evidence to establish the necessary causal

connection.  *See Piercy*, 480 F.3d at 1198-99 ("[T]he passage of time does not necessarily bar a

plaintiff's retaliation claim if additional evidence establishes the retaliatory motive."); *Haynes v.

Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) ("Standing alone, temporal

proximity between the protected activity and the retaliatory conduct must be very close in time.

Otherwise, the plaintiff must offer additional evidence to establish causation." (quotation omitted)).

There is no indication that Ms. Bustos's prior protected activity had anything to do with the

lack of consideration of Ms. Bustos for the addictions treatment counselor positions, which were

filled by the time Ms. Bustos submitted her application.   Mr. King was unaware of the prior

protected activity.  Ms. Bustos points out that Mr. King waived the master's degree requirement for

both Mr. Segura and Mr. Malott.  However, Mr. Segura and Mr. Malott were hired as addictions

treatment counselors, not addictions facility managers.  Ms. Bustos submitted her application only

after both addictions treatment counselor positions were filled.  It was not possible for Mr. King to

consider her application for addictions facility manager as an application for addictions treatment

counselor because no such position was open on June 15, 2007.

There is also no indication that the prior protected activity had any relation to the decision

not to interview or hire Ms. Bustos for the addictions facility manager position. Ms. Bustos was not qualified for the addictions facility manager job. All six persons employed by the Addictions Bureau as addictions facility managers satisfied the posted requirements for those positions. Although a retaliatory motive could be inferred from a disparate application of policies to similarly situated applicants, *see Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 (8th Cir. 1998), Ms. Bustos has not identified any addictions facility manager for whom the job requirements were waived. Indeed, Ms. Bustos conceded that she did not intend to apply for that position. Considered in the aggregate and viewed in the light most favorable to Ms. Bustos, the record contains no evidence that would support an inference of retaliation. Because the record contains no evidence of a causal connection between the protected activity and the adverse employment action, Ms. Bustos has failed to establish the third element of a prima facie case of retaliation.

If a plaintiff is unable to make out a prima facie case, judgment as a matter of law is appropriate. *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 936 (10th Cir. 2001) (reversing district court's denial of a post-verdict motion for judgment as a matter of law where court held plaintiff did not suffer from an adverse employment action). NMCD is entitled to summary judgment on both the discrimination claim and the retaliation claim.

**THEREFORE**,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**